1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DESMON LOEB,                              No. CIV S-03-0381-FCD-CMK-P

12                Plaintiff,

13          vs.                                FINDINGS AND RECOMMENDATIONS

14   D.L. RUNNELS, et al.,

15                Defendants.

16   _____/

17          Plaintiff, a state prisoner proceeding pro se and in forma pauperis, brings this civil

18   rights action pursuant to 42 U.S.C. § 1983.  Pending before the court is defendants' motion for

19   summary judgment (Doc. 72).  Plaintiff has filed an opposition (Doc. 77), and defendants have

20   filed a reply (Doc. 78).

21

22                                  I.  BACKGROUND

23          This action proceeds on plaintiff's amended complaint, filed on May 27, 2003.

24   On November 19, 2003, the court: (1) dismissed all claims against defendants Runnels, Felker,

25   Johnson, Cole, and Boitano; (2) dismissed plaintiff's due process claims against defendants

26   Mumby, and Cain; and (3) dismissed plaintiff's due process claims against defendants Wagner

1

1   and Mumby with respect to processing a grievance concerning confiscated property.  On May

2   14, 2004, the court dismissed defendant Kopec.  On August 19, 2004, the court dismissed

3   plaintiff's claims against defendant Jackson for failure to exhaust administrative remedies.

4   Pursuant to the August 19, 2004, order, this action now proceeds against defendants Mumby and

5   Cain solely on plaintiff's retaliation claims, and against defendant Wagner on plaintiff's due

6   process and retaliation claims with respect to the processing of plaintiff's grievances (other than

7   grievances relating to the confiscation of personal property).

8           The court notes that plaintiff sought summary judgment on his retaliation and due

9   process claims on July 11, 2005.  That motion was denied.  As to plaintiff's retaliation claims,

10   the court concluded:

11                   To prevail on his motion for summary judgment, plaintiff
        must provide undisputed evidence establishing each of the elements of his
12      retaliation claim.  Here, the only evidence submitted with plaintiff's
        motion is his own declaration.  However, the court concludes that this
13      "evidence" is nothing more than a conclusory recitation of plaintiff's
        claims.  Plaintiff cannot, therefore, meet his summary judgment burden.
14      Moreover, defendants have submitted declarations in support of their
        opposition to plaintiff's motion tending to suggest that their conduct
15      served legitimate penological purposes.  Thus, it is clear that there are
        disputed issues of material fact which preclude granting summary
16      judgment [in favor of plaintiff].

17   As to plaintiff's due process claim, the court concluded:

18                   As with plaintiff's retaliation claims, plaintiff has not
        provided undisputed evidence which establishes a due process violation as
19      a matter of law.  Again, the only "evidence" submitted by plaintiff is his
        conclusory declaration.  In any event, and as defendants correctly note, a
20      prison's grievance process does not confer a substantive right because
        inmates do not have a right to a particular grievance procedure.  See
21      Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003).  Plaintiff has not
        alleged that the prison has no grievance procedure.  And, in fact, the
22      record demonstrates that a procedure for grievances does exist.  Plaintiff's
        allegations concerning defendant Wagner's processing of his inmate
23      grievance do not give rise to a due process violation.  Moreover, to the
        extent plaintiff asserts that defendants failed to follow state law
24      requirements as to processing of inmate grievances, such a claim is not
        cognizable under 42 U.S.C. § 1983.  See Ove v. Gwinn, 264 F.3d 817, 824
25      (9th Cir. 2001).

26   Defendants now seek summary judgment in their favor on these same claims.

                                              2

## II. APPLICABLE STANDARD

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986);

T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and

that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict

for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party

need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any.  See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See

Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed

before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On October 29, 2003, the court advised plaintiff of the requirements for opposing

a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland,

154 F.3d 952 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

### III.  DISCUSSION

As outlined above, plaintiff's retaliation and due process claims are the sole remaining issues in this case.

#### A.   Retaliation

Plaintiff claims that defendants Mumby and Cain retaliated against him because he had filed inmate grievances in April and May 2002 following plaintiff's placement in administrative segregation for failing to return to his cell.  Plaintiff also claims that defendants Mumby and Cain retaliated against him because he disagreed with his work placement.  As to defendant Wagner, plaintiff contends that he failed to investigate inmate grievances in retaliation for plaintiff having filed grievances against defendant Wagner on prior occasions.

Prisoners retain a First Amendment right to petition the government through the prison grievance process.  See Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995).  In order to prevail on a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security.  See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam).  In meeting this standard, the prisoner must submit evidence establishing a specific link between the alleged retaliation and the exercise of a constitutional right.  See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989).  The prisoner must also establish that his constitutional right was actually chilled by the alleged retaliatory conduct.  See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000).  Thus, the prisoner plaintiff must establish the following in order to prevail on a claim of retaliation:  (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action actually chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose.  See Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005).  It is the prisoner's burden to establish that there were no

1  legitimate penological purposes motivating the actions of which he complains.  See Pratt, 65

2  F.3d at 808.  Finally, retaliation claims are evaluated in light of the deference generally accorded

3  prison officials.  See id. at 807.

4           When plaintiff sought summary judgment in his favor on his retaliation claims, he

5  bore the burden of establishing that there was no dispute as to each element.  The court

6  concluded that, not only had plaintiff not met this burden because he failed to produce any

7  evidence, defendants had produced evidence establishing that, in fact, they acted in light of valid

8  penological interests.  In their motion for summary judgment, defendants argue that, because

9  valid penological interests justified their actions, they are now entitled to summary judgment in

10  their favor.  Because this is a necessary element, if the court concludes that there is no genuine

11  dispute as to whether penological interests justified defendants' actions, summary judgment must

12  be granted in favor of defendants on plaintiff's retaliation claims.

13           Because defendants are the moving parties, they now bear the burden of

14  informing the court of their position and identifying the evidence which shows that there is no

15  genuine dispute of material fact.  In support of their motion, defendants argue that there is no

16  genuine dispute that valid penological interests justified their actions.  In support of this position,

17  defendants have provided the court with a copy of plaintiff's deposition, along with the various

18  documents attached thereto as exhibits.  At the time of his deposition, plaintiff either

19  authenticated the documents or failed to object to their authenticity.

20           The evidence submitted establishes to the court's satisfaction that valid

21  penological interests did in fact exist to justify defendants' conduct.  In particular, defendants'

22  conduct was motivated by a desire to ensure institutional security based on the following conduct

23  of plaintiff: (1) refusing to return to his assigned cell after his shower; (2) plaintiff failed to

24  adhere to the grooming standards; and (3) plaintiff refused to accept his property.  As to

25  defendant Wagner, who is accused of retaliating against plaintiff by screening out his various

26  institutional grievances against the other defendants, defendants have submitted evidence, in the

6

1    form of defendant Wagner's grievance decisions, showing that each screening decision was

2    based on a relevant provision of California regulations, and not some other improper reason.

3          The burden shifts to plaintiff to establish a triable dispute.  Plaintiff has attached

4    to his opposition various documents, including discovery responses received from defendants,

5    pleadings in this case, and many of the same prison documents submitted by defendants.

6    Plaintiff has also provided the declaration of Rosie L. Loeb, plaintiff's mother.  Even if much of

7    that declaration were not hearsay, there is nothing in the declaration to suggest that defendants'

8    actions were motivated by something other than legitimate penological interests.  Mrs. Loeb

9    states that "One of the counselors was very disrespectful, and unprofessional."  First, this does

10   not identify any particular defendant.  Second, this does not specify whether a defendant was

11   disrespectful or unprofessional towards plaintiff.

12         The court finds that plaintiff's opposition merely restates the allegations

13   contained in the complaint.  Plaintiff has not provided any evidence to show that defendants'

14   conduct was motivated by something other than legitimate penological interests.  Put simply,

15   there is not dispute on this necessary element of plaintiff's retaliation claim.  Summary judgment

16   in favor of defendants is appropriate.

17         **B.    Due Process**

18         Plaintiff claims that defendant Wagner violated his due process rights in

19   connection with processing his grievances.

20         The Due Process Clause protects prisoners from being deprived of life, liberty, or

21   property without due process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  In order

22   to prevail on a claim of deprivation of due process, a plaintiff must first establish the existence of

23   a liberty or property interest for which the protection is sought.  See Ingraham v. Wright, 430

24   U.S. 651, 672 (1977); Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972).  Due process protects

25   against the deprivation of property where there is a legitimate claim of entitlement to the

26   property.  See Bd. of Regents, 408 U.S. at 577.  Protected property interests are created, and their

1   dimensions are defined, by existing rules that stem from an independent source – such as state

2   law – and which secure certain benefits and support claims of entitlement to those benefits.  See

3   id.

4          Liberty interests can arise both from the Constitution and from state law.  See

5   Hewitt v. Helms, 459 U.S. 460, 466 (1983); Meachum v. Fano, 427 U.S. 215, 224-27 (1976);

6   Smith v. Sumner, 994 F.2d 1401, 1405 (9th Cir. 1993).  In determining whether the Constitution

7   itself protects a liberty interest, the court should consider whether the practice in question ". . . is

8   within the normal limits or range of custody which the conviction has authorized the State to

9   impose."  Wolff v. McDonnell, 418 U.S. 539, 557-58 (1974); Smith, 994 F.2d at 1405.   In

10  determining whether state law confers a liberty interest, the Supreme Court has adopted an

11  approach in which the existence of a liberty interest is determined by focusing on the nature of

12  the deprivation.  See Sandin, 515 U.S. at 481-84.  In doing so, the Court has held that state law

13  creates a liberty interest deserving of protection only where the deprivation in question: (1)

14  restrains the inmate's freedom in a manner not expected from the sentence; and (2) "imposes

15  atypical and significant hardship on the inmate in relation to the ordinary incidents of prison

16  life."  Id. at 483-84.

17         Applying these standards, the Supreme Court has concluded that prisoners have

18  no liberty interest in good-time credits, see Wolff, 418 U.S. at 557; in remaining in the general

19  population, see Sandin v. Conner, 515 U.S. 472, 485-86 (1995); in not losing privileges, see

20  Baxter v. Palmigiano, 425 U.S. 308, 323 (1976); in staying at a particular institution, see

21  Meachum, 427 U.S. at 225-27; or in remaining in a prison in a particular state, see Olim v.

22  Wakinekona, 461 U.S. 238, 245-47 (1983).  The Ninth Circuit has concluded that prisoners have

23  no liberty interest in remaining free from administrative segregation or solitary confinement.

24  See May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997).

25         Plaintiff cannot prevail on this claim as a matter of law.  As the court noted in its

26  previous decision, a prison's grievance process does not confer a substantive right because

8

1  inmates do not have a right to a particular grievance procedure.  See Ramirez, 334 F.3d at 860.

2  Plaintiff's allegations concerning defendant Wagner's processing of his inmate grievance,

3  therefore, do not give rise to a due process violation.  Moreover, to the extent plaintiff asserts

4  that defendants failed to follow state law requirements as to processing of inmate grievances,

5  such a claim is not cognizable under § 1983.  See Ove, 264 F.3d at 824.  Summary judgment in

6  favor of defendants is appropriate.

7

8                              **IV.  CONCLUSION**

9          Based on the foregoing, the undersigned recommends that:

10         1.       Defendants' motion for summary judgment be granted; and

11         2.       The Clerk of the Court be directed to enter judgment and close this file

12         These findings and recommendations are submitted to the United States District

13  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within ten days

14  after being served with these findings and recommendations, any party may file written

15  objections with the court.  The document should be captioned "Objections to Magistrate Judge's

16  Findings and Recommendations."  Failure to file objections within the specified time may waive

17  the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

18

19  DATED:   April 27, 2006.

20

21                                       CRAIG M. KELLISON

22                                       UNITED STATES MAGISTRATE JUDGE

23

24

25

26

9